**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Rosa Lainez Lemus, individually and as natural parent and guardian of minor G.R.L., and G.R.L.,

    Plaintiffs

v.

Clark County School District,

    Defendant

Case No.: 2:24-cv-00700-JAD-MDC

**Order Granting Defendant's Motion to Dismiss and Closing Case**

[ECF No. 48]

    Rosa Lainez Lemus and her minor daughter G.R.L. sue the Clark County School District (CCSD) for failing to protect G.R.L. from a violent attack by another student during class at Las Vegas High School.[1] The plaintiffs contend that CCSD maintains a practice of placing students with known behavioral issues in classrooms with other students and that practice created a danger to G.R.L. that ultimately caused her injuries. I previously dismissed the plaintiffs' complaint with leave to amend because it didn't sufficiently allege that any such practice existed or that CCSD's actions created the danger G.R.L. faced.[2] CCSD now moves to dismiss the second-amended complaint on largely the same grounds. Alhough the plaintiffs were able to add more details about an allegedly longstanding CCSD practice of ignoring known threats from students, the facts do not support the inference that CCSD's actions in this case created a danger to G.R.L. So I grant CCSD's motion to dismiss and, because any further amendment would be futile, I close this case.

---

[1] ECF No. 47 (second-amended complaint).

[2] *See* ECF No. 35 at 16:15–18:22.

**Background**

**A.     G.R.L. is attacked by another student during class.**

On February 1, 2022, G.R.L. and another student—identified in the complaint as N.A.—were in a geometry class together. During class, N.A. "approached G.R.L. and made threatening statements."[3] G.R.L. told her teacher about N.A.'s threats and "indicated her concern for her physical safety resulting from such statements," but the teacher "took no steps to protect G.R.L."[4] N.A. "approached G.R.L. and began to threaten and otherwise harass" her before "repeatedly punch[ing] and/or beat[ing]" the back of her head until G.R.L. lost consciousness.[5] N.A.'s attack was unprovoked and caused G.R.L. to sustain physical and mental injuries.[6]

**B.     This court dismissed the plaintiffs' first complaint because it didn't adequately allege that a CCSD policy or practice caused G.R.L.'s injuries.**

G.R.L. and her mother sue the school district under 42 U.S.C. § 1983 for its failure to prevent the attack. They theorize that the district should be held liable under *Monell v. Department of Social Services*[7] because that the district has a policy or longstanding practice of "placing students known to be violent in classrooms with other students" and that, on this occasion, that practice caused G.R.L's injuries and violated her Fourteenth Amendment rights.[8] It alleges that CCSD has a duty to protect its students while they are on campus and that its practice of ignoring the risks associated with allowing violent students into general classrooms

---

[3] ECF No. 47 at 6, ¶ 31. This paragraph is merely a summary of the allegations in the second-amended complaint and not findings of fact.

[4] *Id.* at 6, ¶ 33.

[5] *Id.* at 6–7, ¶¶ 34–35.

[6] *Id.* at 27, ¶ 118.

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[8] ECF No. 47 at 24, ¶ 42.

caused a "state-created danger" that it must be held liable for.[9] I previously dismissed G.R.L.'s claim, finding that she didn't sufficiently allege that CCSD had such a policy or that it was the moving force behind G.R.L.'s injuries.[10]

### C. Plaintiffs' second-amended complaint adds facts about CCSD's practices and N.A.'s behavioral history.

In the plaintiffs' second-amended complaint, they add a list of public comments and legal cases against CCSD to support the allegation that CCSD has a practice of knowingly placing violent students in classrooms. Those allegations show that several individuals have complained about CCSD's response to situations in which students bullied or physically attacked other students at schools throughout the district.[11] Some of those instances reflect circumstances analogous to G.R.L.'s allegations, in which a student was bullied or injured by another student with a history of similar conduct and CCSD didn't act to prevent that harm. Other examples concern CCSD's response to bullying and violence in schools more generally.

The plaintiffs round out their allegations with information that they claim is sufficient to show that CCSD had knowledge of N.A.'s "history of violence and mental[-]health problems with other student[s] in public school classes."[12] According to the plaintiffs, CCSD's records show that N.A. was institutionalized for a "mental long-term condition" in March and April of 2021.[13] N.A. was also "under a doctor's care that prevented her from attending school to start

---

[9] *Id.* at 25, ¶ 112 (cleaned up).

[10] ECF No. 35 at 16:15–18:22.

[11] *See* ECF No. 47 at 7–23, ¶¶ 40–97.

[12] *Id.* at 4, ¶ 14.

[13] *Id.* at 4, ¶¶ 17–18 (cleaned up).

the 2021–22 school year . . . ."[14] N.A. eventually returned to school on January 31, 2022—the day before she attacked G.R.L.[15]

The plaintiffs also point to five disciplinary reports that they contend show that CCSD knew N.A. "was insubordinate and had previously threatened" other students.[16] Three of those reports were from 2020, and they reflect that N.A. was written up for being insubordinate, ignoring teachers, and refusing to sit down when asked.[17] And, in 2019, N.A. was twice cited for threatening other students.[18] At one point before the incident (the plaintiffs don't say when), N.A. was cited for "Bullying-Battery Student with Injury."[19]

CCSD moves to dismiss G.R.L.'s second-amended complaint.[20] It argues that the plaintiffs' allegations concerning past complaints against CCSD don't sufficiently allege a district practice of allowing violent students into classrooms.[21] And even if they do, the district argues, the plaintiffs haven't shown that N.A.'s history would have put it on notice that placing her in a classroom would have endangered other students.[22] So, CCSD argues, the plaintiffs cannot show that the policy, even if it existed and applied in this case, was a moving force behind G.R.L's injuries.[23]

---

[14] *Id.* at 5, ¶ 19 (cleaned up).
[15] *Id.* at 6, ¶ 28.
[16] *Id.* at 5, ¶ 20.
[17] *Id.* at 5, ¶¶ 21–22, 24.
[18] *Id.* at 5–6, ¶¶ 25–26.
[19] *Id.* at 6, ¶ 27.
[20] ECF No. 48.
[21] *Id.* at 7–9.
[22] *Id.* at 9–10; ECF No. 54 at 3–4.
[23] ECF No. 48 at 10.

**Discussion**

**A.     To survive a motion to dismiss, a complaint must allege facts from which a court can reasonably infer that the defendant is liable for the alleged misconduct.**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[24] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[25] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[26] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[27]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[28] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[29] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[30] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged

---

[24] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[25] *Twombly*, 550 U.S. at 570.

[26] *Iqbal*, 556 U.S. at 678.

[27] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (emphasis in original)).

[28] *Iqbal*, 556 U.S. at 678–79.

[29] *Id.*

[30] *Id.* at 679.

misconduct.[31] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[32]

**B.   The plaintiffs haven't adequately alleged facts to support their state-created-danger theory of liability.**

To adequately allege municipal liability under § 1983, a plaintiff must show, "(1) that [she] possessed a constitutional right of which [she] was deprived, (2) that the municipality had a policy, (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation."[33] The plaintiffs rely on the "state-created-danger" doctrine of liability to contend that CCSD's conduct amounts to deliberate indifference and that its practices were the moving force behind G.R.L.'s injuries.[34]

In the Ninth Circuit, state officials may be held liable "for their roles in creating or exposing individuals to dangers they otherwise would not have faced."[35] This "state-created-danger" doctrine applies only if the plaintiff adequately alleges "affirmative conduct on the part of the state in placing the plaintiff in danger" and facts sufficient to infer that the state acted

---

[31] *Id.*

[32] *Twombly*, 550 U.S. at 570.

[33] *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (cleaned up).

[34] *See* ECF No. 47 at 25, ¶ 112; ECF No. 53 at 21–22.

[35] *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 (9th Cir. 2006) (cleaned up).

"with deliberate indifference to a known or obvious danger."[36] The injuries that a plaintiff suffered as a result of the state's affirmative act must have been foreseeable.[37]

Even if I assume that the plaintiffs have adequately alleged that CCSD had a practice of placing students known to be violent in classrooms with other students and that such a policy could constitute "affirmative conduct" under the first part of the state-created-danger framework, the plaintiffs must sufficiently allege that CCSD knew that N.A. posed an obvious danger and that allowing her to attend classes would have foreseeability caused G.R.L.'s injuries. The plaintiffs allege and argue that CCSD should have inferred from N.A.'s stays at mental-health hospitals and reports of her insubordination and threatening behavior years earlier that placing N.A. in a classroom with other students created an obvious danger that N.A. would violently assault another student.

But that inference isn't reasonable. The amended complaint contains no facts suggesting that N.A.'s "mental long-term condition"[38] involved or resulted in violent tendencies or that CCSD knew such details. And the fact that N.A. was not enrolled in school for the months leading up to the attack because she was under a doctor's care similarly does not amount to any knowledge on CCSD's part that N.A. may commit a violent attack during her second day back in

---

[36] *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 975 (9th Cir. 2011) (cleaned up).

[37] *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (articulating the state-created-danger doctrine as containing three elements: "First, she must show that the officers' affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced. Second, she must show that the injury she suffered was foreseeable. Third, she must show that the officers were deliberately indifferent to the known danger." (citing *Hernandez v. City of San Jose*, 897 F.2d 1125, 1133 (9th Cir. 2018)). CCSD contends that the Ninth Circuit "has not recognized a state-created-danger theory based exclusively on a public[-]school official's failure to detect and prevent student-on-student harassment . . . ." ECF No. 48 at 10 (cleaned up). For the purposes of this motion, I assume that the Ninth Circuit would permit that theory in these circumstances if the factual allegations supported it. But here, they don't.

[38] ECF No. 47 at 4, ¶ 17 (cleaned up).

class. The only relevant knowledge that CCSD did have was of N.A.'s disciplinary history of insubordination, disobeying teachers, and threatening two students in 2019 and 2020. Those facts do not support an inference that CCSD was aware of—and deliberately ignored—the danger that N.A.'s presence in class might pose to other students in 2022. So, even if the plaintiffs adequately pled that CCSD had an unconstitutional practice of putting students with known violent tendencies into classrooms with other students, they haven't alleged facts from which it can be inferred that such a practice was the moving force behind G.R.L.'s injuries.[39] Nor do the facts alleged support the inference that G.R.L.'s injuries would have been a foreseeable consequence of allowing N.A. to attend class. So I grant CCSD's motion to dismiss on this basis.

**B.     The plaintiffs' failure-to-train theory remains devoid of factual support.**

In their original complaint, the plaintiffs also alleged that CCSD is liable for G.R.L.'s injuries because it "failed to have and/or implement a policy of training its teachers and staff members to prevent students from being physically abused."[40] In their response brief to CCSD's motion to dismiss that complaint, the plaintiffs acknowledged that "this claim may not meet the *Twombly-Iqbal* standard," and they sought leave to amend those allegations.[41] I denied that request, finding that the plaintiffs had not provided any plausible facts to support that theory, nor had they shown that they could supply those facts if given leave to amend.[42]

Despite that ruling, the plaintiffs again allege that CCSD "failed to have and/or implement a policy of training its teachers and staff members to prevent students from being

---

[39] *See Van Ort*, 92 F.3d at 835.
[40] ECF No. 9-1 at 10, ¶ 27.
[41] ECF No. 18 at 7–8.
[42] ECF No. 35 at 19:11–17.

8

physically abused."[43] They add no further facts to support that theory, and my conclusion that their failure-to-train theory is inadequately pled has not changed. So I also dismiss the complaint to the extent that it alternatively relies on a failure-to-train theory for *Monell* liability.

**Conclusion**

IT IS THEREFORE ORDERED that defendant Clark County School District's motion to dismiss **[ECF No. 48] is GRANTED**. The second-amended complaint is DISMISSED. And because giving the plaintiffs further leave to amend would be futile, the Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 10, 2025

---

[43] ECF No. 47 at 23, ¶ 101.